IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


GERALD JAMES HOLLAND                                    PETITIONER

VS.                                      CIVIL ACTION NO. 1:98CV562B

JAMES ANDERSON, COMMISSIONER, AND
WALTER BOOKER, SUPERINTENDENT                          RESPONDENTS


<u>OPINION AND ORDER</u>

This cause is before the Court on Petitioner Gerald James
Holland's Amended Petition for Writ of Habeas Corpus.[1]  Having
considered the Amended Petition, Response, Reply and the record of
the proceedings below, as well as supporting and opposing
authority, the Court finds that the Amended Petition for Writ of
Habeas Corpus is not well taken and should be denied.

### I.  Factual Background and Procedural History

This Amended Petition for Writ of Habeas Corpus arises out of
the conviction and subsequent sentence of death imposed on
Petitioner Gerald James Holland for the murder of Krystal D. King.
During the course of this case, the Mississippi Supreme Court has
published three separate opinions.  First, in <u>Holland v. State</u>, 587
So.2d 848 (Miss. 1991) (hereinafter "<u>Holland</u> I"), the court

_____

[1]No "original" Petition for Habeas Corpus Relief was filed by
Holland.  The pleadings which initiated this case were Holland's
Application for Stay of Execution and his Motion for Appointment of
Counsel, which were filed on December 15, 1998.

affirmed the conviction returned by the jury in the trial court, but reversed the sentence of death.  After Holland I was rendered, Holland was again sentenced to death.  Second, in Holland v. State, 705 So.2d 307 (Miss. 1997) (hereinafter "Holland II"), the court affirmed Holland's second death sentence.  Holland then filed a Petition for Post-Conviction Relief with the Mississippi Supreme Court.  In the third and final published opinion, Holland v. State, 878 So.2d 1 (Miss. 2004) (hereianfter "Holland III"), the court denied that Petition.

The facts of this case were efficiently set forth by the Mississippi Supreme Court in the Holland cases described above. This Court adopts the following facts from those reported opinions.[2]

> In September 1986, Gulfport police arrested 49-year-old Gerald James Holland for the murder of 15-year-old Krystal D. King. The Harrison County Grand Jury subsequently indicted Holland for capital murder and the underlying felony of rape. Venue changed to Adams County, where a jury in December 1987 found Holland guilty and sentenced him to death. Holland appealed. This Court affirms the conviction, overturns the death sentence, and remands for re-sentencing.
> Around 8:00 p.m. on a warm Thursday evening--September 11, 1986--21-year-old Willie Boyer ran into his friend, Krystal King, at the Biloxi Beach Arcade. They "hung out" at the arcade until around 9:30--at which time they decided to stroll down to the beach and drink a six-pack of beer. Hours passed; midnight arrived; and the beer ran out. Krystal asked Willie to drive her to a house, unfamiliar to him,

---

[2]The heading names and subheading numbers appearing in the published opinions are omitted from the following quotes.

located on Burton Avenue in Gulfport. "Jerry" Holland, the appellant in this case, owned this house.

Jerry Holland had not lived in Gulfport all his life; he grew up in his birthplace, Los Angeles, with his mom, dad, two younger brothers, and a younger sister. His dad worked various jobs--as an electrician, truck mechanic, and other positions involving general maintenance. His mom was a homemaker.

During the latter half of his teen-aged years, Holland moved with his family to Memphis where he completed his high-school education and received a "certificate of credits." He left home at the age of twenty-one, and survived by working odd jobs. Holland explained: "[A]s I got older, I worked selling shoes, [became a] dental technician, and got into the electrical trade and stayed in it most of the time." He accumulated over twenty years' experience as an electrician--with some vocational training in this field. He "lived and worked in different places," married and divorced twice, fathered five children, and ran afoul of the law. His criminal record includes convictions for burglary, larceny (auto theft), and rape of a child. He received a four-year term in a Texas prison for the rape; however, he served only one year before being paroled in 1976. He moved to Gulfport in 1981. Five years later, his and Krystal's path crossed.

By that time, in June or July 1986, Holland's second wife had left him and taken their only child, Ina, with her. He was doing "contract work" on and off, and he had secured a roommate, 21-year-old Jerry Douglas, who introduced him to Krystal.

On the night when Boyer drove Krystal to Burton Avenue, Holland had been drinking. This was not out of character for Holland. He had, as of August 1, become a drinker of at least a "six-pack" of beer a day--which he attributed to his "despondence" over his then-pending divorce. Boyer "remember[s] seeing [Holland] have ... one [beer] the whole time [he] was there," and he "did not appear ... to be intoxicated or drunk." Boyer himself "had a little bit of tequila and a beer," and Krystal abstained completely. Meanwhile, Douglas and 19-year-old Carter Fugate, who had only recently moved in, slept soundly in their bedrooms; they had been in bed since 11:00 p.m.

Boyer and Krystal's visit lasted for a couple hours--during which time they watched "David Letterman" (a T.V. talk show) and listened to Holland small-talk about his divorce and the "divorce papers" which he had

just received in the mail. Around 2:30 a.m., Boyer decided to leave, and Krystal remained behind. That was the last time Boyer saw her alive.

Later in the night--between 3:20 and 3:30 a.m.--a "bump" awakened Douglas:

> DOUGLAS: I got up to go to the bathroom and to get a drink of water. I opened my bedroom door, the lights in the house was on, the front door standing wide open.
>
> ....
>
> I heard another noise outside the front door.... [I] looked through the ... door and I saw [Holland] bent over a black object on the ground. I looked at him and asked him, "Jerry, what is going on?" And he looked back up at me and says, "Go back to bed you don't want to know."

Vol. IX, at 1401-02. Douglas then went into the kitchen and peered out the window: "I saw him roll[ ] this object into the back of his pick up truck and it made a loud thud sound when it hit the bed of the truck."

Holland returned to the house and, once inside, Douglas noticed that "he had a wild look on his face, his eyes were very big and glassy looking, and he was shaking." At that point, Holland confessed: "My God, I killed her [Krystal], I killed her." Id. at 1402. According to Douglas, Holland then explained that he and Krystal had had sex on the couch--after which she picked up his "razor-sharp" hunting knife located nearby and "started playing with it." Holland and Krystal "winded up going into his bedroom and she [continued to] play with the knife." Holland "took the knife from her and the next thing he knew it was in her chest." "[H]e had stabbed her."

Douglas noted that Holland changed his story a few minutes later: Holland told him that he and Krystal were "wrestling around on the bed and [she] rolled off the bed and she fell onto the knife." Holland also told him that "he mutilated the body to cover up the stab wounds" and to "make it look like a sex fiend had done it." And he explained that he had placed the body in his truck "to ... bury it and try and cover everything up."

Douglas, under duress, accompanied Holland to bury Krystal's body. Douglas later contacted the Gulfport Police Department and informed homicide detectives--including Wayne Payne and Glen Terrell--about the murder. Upon hearing Douglas' story, the detectives acquired arrest and search warrants.

At approximately 11:20 a.m. on September 12, 1986, a Gulfport Police Department S.W.A.T. Unit executed the warrants; the Unit entered Holland's home, arrested him, and read him his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1629-30, 16 L.Ed.2d 694, 726 (1966). Detectives Payne and Terrell read Holland his rights three more times at the police station. Holland decided to waive them and confess.

> HOLLAND: We had ... I think we had sex. I was pretty much drunk.... I don't even know if we did it or not and she was sitting in my lap and ... she saw my goddamned hunting knife. She started playing with it and she said let's go to bed, I'm sleepy. I said are you going to sleep on the couch or do you want to sleep with me? She says I'll sleep with you, so we went to the bedroom and she ... still had that goddamned knife in her hand. She was messing around with it like Zorro and all that bullshit. Typical kid at that point, I mean.
> ....
> I was dodging [the knife] ... and I grabbed her wrist and I was going to take it away from her before one of us got hurt with it and then I bumped into her chest and she says I'm dead. Then things got kind of black there for a minute.

After confessing, Holland accompanied detectives to the burial site; they exhumed the body. An autopsy conducted by Dr. Paul McGarry revealed that Krystal had been brutally battered. McGarry described her injuries and their sequence.

> The first injuries were of the face, over the sides of the face, over the center of the face, the lips, over the nose, the eyes, they were more swollen, they were the most advanced. About the same time frame, next in line, the injuries of the arms, forearms, wrists, knees, shins. In that same time pattern, the injuries to the genital region, the stretching and scraping and tearing of the vagina and rectal tissues.... These are produced by forceful penetration of the vagina and rectum by a structure that is able to distend and stretch and tear in a symmetrical pattern. In other words, a round--a roughly round structure penetrating and stretching the vagina and stretching the anus and rectum....

> In order to produce these injuries all the
> [sic] around the edge, it has to be something
> not as firm and unyielding as a metal or
> wooden instrument. It has to be a part of a
> human body or something with that same texture
> consistency[--like a] male sex organ.
>
> Next is the stab wound of the chest which
> went through the heart and through the aorta.
> Next after that is the ligature around the
> neck, the tying of the shirt tightly around
> the neck catching the hair in the shirt. Next
> is the blow to the back of the head which
> caught the hair that was in the ligature in
> that position and the last injury ... a pair
> of underpants ... was stuffed down the throat,
> down as far as the voice box....

Vol. XII, at 2184-85. McGarry stated that Krystal
probably remained conscious during the entire ordeal
until, finally, "she died of asphyxiation because of the
ligature placed around her neck which closed off her
airway, and the stuffing of clothing down her throat that
obstructed her windpipe." She probably did not die from
the stab wound; indeed, she could have lived "as long as
several hours" after being stabbed had she not been
strangled. The stab wound did, however, contribute to her
death. The mutilation of her genital area occurred
post-mortem.

On November 17, 1986, a grand jury returned an
indictment against Holland for killing Krystal with
"malice aforethought" while "engaged in the commission of
the crime and felony of rape." See MISS.CODE ANN. § 97-3-
19(2)(e) (1972). The Grand Jury later re-indicted him for
the same crime but as an habitual offender. Id. §
99-19-83 (1990 Supp.).

On November 30, 1987--after numerous hearings on
pre-trial motions--Judge Kosta N. Vlahos held trial at
the Adams County Circuit Court. [FN1] Twelve days later,
the trial concluded. The jury found Holland guilty as
charged and sentenced him to death.

FN1. Holland had filed a motion in the Harrison County
Circuit Court for a change of venue, which Judge Vincent
Sherry had granted.

Holland I, pp. 851-53 (ellipses and bracketed text in original).

As stated above, in <u>Holland</u> I the Mississippi Supreme Court affirmed Holland's conviction, but overturned the death sentence and remanded that issue to the trial court for a new hearing. The following facts are from <u>Holland</u> II.

> The first jury ... prematurely considered the death sentence before the mitigating and aggravating evidence was presented and before the instructions of the law were given by the trial court. This Court [in <u>Holland</u> I] held that the defendant's Sixth Amendment right to a fair and impartial jury had been violated, vacated the death sentence and remanded for a new sentencing hearing. [<u>Holland</u> I] at 872. Holland was granted a new sentencing hearing and again received the death penalty, which he is now appealing. He asserts that the trial court impermissibly restricted his mitigation evidence at rehearing. Therefore, the issue presented here concerns the scope of evidence admissible in mitigation after remand for resentencing before a new sentencing jury.
>
> Holland filed a bevy of motions which were denied by the trial judge with certain exceptions. The trial judge reserved evidentiary rulings on each piece of evidence until presented at the trial. As to aggravating factors, the trial judge submitted by instruction the following aggravators: (1) that the capital offense was committed while the defendant was engaged in the act of commission of the crime of rape, (2) that the capital offense was committed for the purpose of avoiding or preventing a lawful arrest, and (3) that the capital offense was especially heinous, atrocious, or cruel. Additionally, the judge submitted to the jury the determination of whether Holland actually killed Krystal D. King, or attempted to kill her, or intended that the killing take place, or contemplated that lethal force would be employed in accordance with the capital sentencing procedure set forth in Miss. Code Ann. § 99-19-101(7)(a-d) (1994 rev.); see <u>Enmund v. Florida</u>, 458 U.S. 782, 797, 102 S.Ct. 3368, 3376-77, 73 L.Ed.2d 1140 (1982). The resentencing jury imposed the death sentence, finding the existence of all three of the aggravating factors, as well as finding that Holland actually killed Krystal King, intended to kill and contemplated that lethal force would be employed. From his sentence of death, Holland appeals.

Holland II, p. 319.

In Holland II, the Mississippi Supreme Court affirmed the direct appeal of Holland's second death sentence. After the decision in Holland II was rendered, but before the Petition for Post-Conviction Relief was filed with the Mississippi Supreme Court (addressed in Holland III), Holland filed with this Court an Application for Stay of Execution and a Motion for Appointment of Counsel to pursue federal habeas corpus relief. These pleadings were filed on December 15, 1998. Through an Order rendered by this Court on December 21, 1998, Holland's execution was stayed and he was appointed counsel. However, the Court noted that Holland had not exhausted all of his state court remedies, which is a prerequisite for seeking federal habeas corpus relief. Accordingly, the Court stayed this case pending exhaustion of state court remedies by Holland.

The procedural path of Holland's efforts to avoid the death penalty then returned to Mississippi state court, in which he filed his Petition for Post-Conviction Relief. In Holland III, the Petition was denied. The subject Amended Petition for Writ of Habeas Corpus (hereinafter "Amended Petition") was filed with this Court on January 18, 2005, under docket entry no. 30. The Amended Petition is now ripe for consideration.[3]

---

[3]The state trial court record before this Court is not paginated with consecutive Bates stamp numbers. Holland I and Holland II have their own separate trial records on appeal, each of

## II.  Holland's Asserted Grounds for Habeas Corpus Relief

Holland's Amended Petition states twelve "claims" under which he contends that habeas corpus relief is warranted under 28 U.S.C. § 2241 et seq.  The claims are:

claim 1:  Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where the Petitioner was denied his right to be tried by a fair and impartial jury;

claim 2:  Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where various prejudicial

---

which begins with Volume I, Bates stamp number one.  Therefore, to alleviate confusion, references to the trial court record pertaining to Holland I and II will be cited in the following analyses as "R., Holland I at #," and "R., Holland II at #," respectively.  The transcript of the trial proceeding in Holland II contains no bates stamp numbers, but does contain traditional page numbering.  Therefore, references to the trial transcript pertaining to Holland II will be cited as "Tr., Holland II at #." When citing the record in Holland III, or to pleadings submitted directly to the Mississippi Supreme Court in Holland I and Holland II, this Court will cite to the title of the referenced pleading. This procedure will be followed with regard to pleadings submitted directly to the Mississippi Supreme Court because those pleadings contain no Bates stamp numbers.  Also, this Court sometimes refers herewith to the appeal process relating to Holland I as "the initial direct appeal," and to the appeal process relating to Holland II as "the second direct appeal."

evidence having no probative value was improperly admitted at trial;

claim 3:  Petitioner was denied his constitutional rights to the effective assistance of counsel under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution at the trial proceeding;

claim 4:  Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where the prosecutor improperly excused two prospective jurors using peremptory challenges;

claim 5:  Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where the Petitioner was denied his right to be re-sentenced by a fair and impartial jury;

claim 6:  Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution at his capital re-sentencing hearing where the State was allowed to present evidence of aggravating factors and proof of same beyond a

reasonable doubt but the Petitioner was precluded from presenting any evidence to rebut the evidence presented by the State;

claim 7: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where the prosecutor improperly expressed his personal opinions and invoked the position of his office to secure the death penalty against the Petitioner;

claim 8: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where the Petitioner's sentence based on the aggravator "especially heinous, atrocious and cruel" is unconstitutional;

claim 9: Petitioner was denied his rights to the effective assistance of counsel under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution at the re-sentencing proceedings;

claim 10: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the

United States Constitution where the Petitioner was denied funds for a neurological examination;

claim 11: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where Petitioner has been subjected to the "death-row phenomenon" and the execution of Petitioner in this case serves no legitimate penological end; and

claim 12: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution by the cumulative effect of the constitutional violations set forth in claims one through eleven above.

Each of these claims is considered in the analyses which follow.

### III.  Legal Standard

The Antiterrorism and Effective Death Penalty Act (hereinafter "AEDPA") became law on April 24, 1996.  Under binding case law set forth by the United States Court of Appeals for the Fifth Circuit, habeas petitions filed after the effective date of the AEDPA are governed by its provisions. Garcia v. Dretke, 388 F.3d 496 (5th Cir. 2004)(citations omitted).  The subject Amended Petition was filed on January 18, 2005.  Therefore the Amended Petition must be

12

judged under the standards of the AEDPA, and under case law interpretations of that Act.

28 U.S.C. § 2254(d) sets forth the two conditions under which a prayer for habeas corpus relief may be granted.  Section 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an *unreasonable* application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(Emphasis added).

As indicated by the plain language of § 2254(d), a petitioner has two avenues through which to pursue federal habeas relief. First, § 2254(d)(1) allows for relief if a federal court finds that a relevant decision of the convicting and/or sentencing state court hinged upon an *unreasonable* application of established federal law. "Under subpart (d)(1) of § 2254, 'unreasonable' does not mean merely incorrect.  '[A]n application of clearly established Supreme Court precedent must be incorrect *and* unreasonable to warrant federal habeas relief.'"  Garcia, 388 F.3d at 500 (emphasis and bracketed text in original; internal and end citations omitted).

The provisions of § 2254(d)(2) reflect the second method through which habeas relief can be sought.  "Section 2254(d)(2)

13

addresses pure questions of fact.  Under this subsection, federal
courts must give deference to state court findings of fact unless
they are based on an unreasonable interpretation of the evidence
presented in the state court proceeding." Brewer v. Dretke, 442
F.3d 273, 276 (5th Cir. 2006)(internal and end citations omitted).
"To prevail under § 2254(d)(2), a petitioner must rebut by *clear
and convincing evidence* the *presumption* that a state court's
factual findings are correct." Smith v. Dretke, 134 Fed.App'x 674,
682 (5th Cir. 2005)(citing 28 U.S.C. § 2254(e)(1) (providing that
"a determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence.")(other citation omitted).

In addition to the general habeas standard presented above,
the Court must also set forth a standard for considering the effect
of an unexhausted habeas claim.  Section 2254(b)(1)(A) provides
that an application for writ of habeas corpus may not be granted
unless "the applicant has exhausted the remedies available in the
courts of the State" where the underlying sentence and/or
conviction occurred.  Section 2254(c) describes what a habeas
applicant must do to adequately exhaust state court remedies.  "An
applicant shall not be deemed to have exhausted the remedies
available in the courts of the State, within the meaning of this
section, if he has the right under the law of the State to raise,

14

by any available procedure, the question presented." <u>Id.</u>   In <u>Bagwell v. Dretke</u>, 372 F.3d 748 (5th Cir. 2004), the Fifth Circuit expounded on, and further defined the provisions of § 2254(c), as follows:

> "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." <u>Wilder v. Cockrell</u>, 274 F.3d 255, 259 (5th Cir.2001) (citations and quotations omitted); <u>see also</u> <u>Castille v. Peoples</u>, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." <u>Anderson v. Harless</u>, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982); <u>see also</u> <u>Moore v. Cain</u>, 298 F.3d 361, 364 (5th Cir.2002). Rather, the petitioner must afford the state court a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." <u>Anderson</u>, 459 U.S. at 6, 103 S.Ct. at 277. "Indeed, where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement." <u>Wilder</u>, 274 F.3d at 259 (quoting <u>Vela v. Estelle</u>, 708 F.2d 954, 958 n. 5 (5th Cir.1983)); <u>Henry</u>, 327 F.3d at 432.

<u>Id.</u> at 755.

To summarize, in order to exhaust state court remedies a petitioner must present the claim in issue with specificity sufficient to allow the state court an opportunity to apply controlling law to the facts of the claim.  The exhaustion requirement is not met if the petitioner advances a <u>*legal*</u> argument in his federal habeas petition that was not relied upon by the petitioner in the underlying state court proceedings.

Further, the exhaustion requirement is not met if the petitioner advances a <u>*factual or evidentiary*</u> argument in his

15

federal habeas petition that was not advanced in the state court proceedings below. That is, "a petitioner fails to exhaust available state remedies when he presents 'material evidentiary support that was not presented to the state court.' '[E]vidence that places the claims in a significantly different legal posture must first be presented to the state courts.'" Morris v. Dretke, 379 F.3d 199, 204-05 (5th Cir. 2004)(emphasis and bracketed text in original; internal and end citations omitted). A federal court must determine whether "additional evidence fundamentally alters or merely supplements" the evidence presented to the state court. Id. at 205 (citation omitted). In short, if the federal habeas claim is "substantially different" from the state court claim in light of new evidence or facts presented to the federal court, then the petitioner has failed to exhaust available state court remedies. Kunkle v. Dretke, 352 F.3d 980, 988 (5th Cir. 2003).

If a petitioner fails to exhaust his state court remedies, then one course of action a federal court may take is to dismiss the habeas petition, without prejudice, which affords the petitioner an opportunity to return to state court and fulfill the exhaustion requirements of § 2254(b)(1)(A). A second option is offered by the provisions of § 2254(b)(2), which states "[a]n application for a writ of habeas corpus may be _denied_ on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." (Emphasis added).

16

As indicated by the language of this code section, a federal court may *deny* an unexhausted claim on the merits, but such a claim may not be *granted* on the merits.

A third option for dealing with an unexhausted claim involves a situation in which the petitioner is in "procedural default" on the claim.  In Bagwell, the Fifth Circuit held "[p]rocedural default ... occurs when a prisoner fails to exhaust available state remedies and *the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred*." Bagwell, 372 F.3d at 755 (emphasis added; citations omitted).

If certain conditions are met, however, a procedural default is not detrimental.

> [A] court may resurrect a defaulted claim, and consider its merits, if [1] "the prisoner can demonstrate *cause* for the default and actual prejudice as a result of the alleged violation of federal law, or [2] demonstrate that failure to consider the claims will result in a fundamental *miscarriage of justice*."

Id. (emphasis added; citations omitted).

To prove "cause," a petitioner "must establish that some 'external force' impeded the defense's efforts to comply with the procedural rule." Id. at 756 (citation omitted).  To meet the "miscarriage of justice" standard, a petitioner must "supplement his constitutional claim with a colorable showing of factual innocence...." Id. at 757 (citations omitted).  The miscarriage of justice standard focuses on *factual* rather than *legal* innocence.

<u>Callins v. Johnson</u>, 89 F.3d 210, 213 (5th Cir. 1996)(citations omitted).  To make an adequate factual showing on this issue, a petitioner must satisfy a federal court of the existence of "a fair probability that, in light of the evidence ... the trier of the facts would have entertained a reasonable doubt of his guilt." <u>Bagwell</u>, 372 F.3d at 757 (citations omitted).  If neither of the two <u>Bagwell</u> conditions is met, then a claim in procedural default can be finally dismissed.

Under these legal standards, this Court considers the claims stated in Holland's Amended Petition.

### IV.  Analysis of Holland's Claims

As set forth above, Holland has enumerated twelve specific claims in his Amended Petition.  In addition, Holland seeks an evidentiary hearing to further develop the claims. <u>See</u> Amended Petition, pp. 44-48, ¶¶ 153-160.  Before analyzing the claims in the Amended Petition, the Court must first consider whether Holland is entitled to an evidentiary hearing.

This issue is controlled by 28 U.S.C. § 2254(e)(2), which states:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
> (A) the claim relies on--
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Based on the facts of this case, the arguments presented by Holland and the counter-arguments presented by Respondents, the Court finds that the conditions set forth in § 2254(e)(2)(A) & (B) are not met. Therefore, Holland's prayer for an evidentiary hearing is denied. The Court now proceeds with analyzing the claims and arguments presented in Holland's Amended Petition.

**A.    claim 1: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where the Petitioner was denied his right to be tried by a fair and impartial jury**

In claim one, Holland argues that his right to a fair trial was violated because he was not tried by a fair and impartial jury. This claim focuses on the _guilt / innocence_ phase of the trial which occurred in December of 1997. It does not pertain to the _sentencing_ phases of trial which initially occurred in December 1997, and again in March and April of 1993, after the reversal and remand of the first death sentence by the Mississippi Supreme Court.

Holland cites the following seven groups of facts in support of a finding that the jury during the guilt / innocence phase of his trial was not fair or impartial:

19

1)    The jury was exposed to prejudicial publicity or an inflamed community atmosphere. Amended Petition, p. 57, ¶ 185;

2)    The jury was exposed to "[a]dverse pretrial publicity." Id. at p. 57, ¶ 187;

3)    The jury's verdict was "affected by prejudicial extraneous facts and information not introduced into evidence" at trial. Id. at p. 58, ¶ 189;

4)    Holland was not allowed a second change of venue. Id. at p. 59, ¶¶ 193-94;

5)    The local coroner stated in front of venire members that Holland should be "strung up." Id. at p. 59, ¶ 195;

6)    The trial judge failed to excuse all venire members who read or talked about news articles covering the issue. Id. at pp. 59-60, ¶¶ 195-96; and

7)    Jurors joked that they should convict Holland so that they could go home. Id. at p. 60, ¶ 197-98.

Rather than address the substance of Holland's arguments, Respondents contend that this claim is procedurally barred as an unexhausted claim.  The Court agrees.

As set forth above, Holland must have exhausted all remedies pertaining to a claim in Mississippi state court before this Court can render a decision on the claim. 28 U.S.C. § 2254(b)(1)(A). Holland argues that the subject claim was presented to the Mississippi Supreme Court under claim one of his initial direct

20

appeal.  The title of that claim is "THE TRIAL COURT'S REFUSAL TO GRANT A MISTRIAL AFTER IT WAS DISCOVERED THAT THE JURORS HAD DELIBERATED *ON PUNISHMENT* PRIOR TO THE SENTENCING PHASE VIOLATES ... THE MISSISSIPPI CONSTITUTION AND ... THE UNITED STATES CONSTITUTION." Brief of Appellant - Initial Direct Appeal,[4] p. 8 (emphasis added; capital letters in original).  The emphasized language in this title provides an indication that the argument presented to the Mississippi Supreme Court pertained to the *sentencing* phase of Holland's trial, and not the *guilt / innocence* phase of the proceeding.  In fact, that is the very argument now made by Respondents.  That is, contend Respondents, Holland's claim in state court pertained solely to the sentencing phase of the December 1997 trial.  Therefore, Respondents argue that the instant claim which pertains to the guilt / innocence phase of that trial is unexhausted.

To analyze this issue, the Court must consider whether Holland sufficiently presented the issue of a tainted jury at the guilt / innocence trial to the Mississippi Supreme Court in both a legal context (see Bagwell, 372 F.3d at 755), and in a factual context (see Morris, 379 F.3d at 204-05).  The Court has reviewed the

---

[4]The title of this pleading is "Brief of Appellant."  However, Holland has appealed his case directly to the Supreme Court of Mississippi on two occasions; once after the initial guilt / innocence and sentencing phase of the proceeding, and once after the second sentencing trial.  See supra, footnote 3.  Therefore, for clarification purposes, this pleading is referenced herewith as "Brief of Appellant - Initial Direct Appeal."

contents of claim one of Holland's initial direct appeal, which is
contained on pages four through eight of the Brief of Appellant -
Initial Direct Appeal.  Although a very expansive reading of that
state court claim could indicate that Holland was asserting a legal
argument for a mistrial in toto, this Court does not adopt such a
reading.  The initial paragraph of the claim refers to the jury
returning a sentence of death before hearing evidence pertaining to
the sentencing phase of the trial. Brief of Appellant - Initial
Direct Appeal, pp. 4-5.  The crux of the remaining arguments focus
on the unconstitutional nature of jurors deliberating before a case
has been submitted to them, i.e., deliberating before they have
heard evidence on an issue. Id. at pp. 5-8.  The only issue on
which the subject jury deliberated prematurely was the sentencing
issue, not the guilt / innocence issue.  This Court therefore finds
that claim one of Holland's initial direct appeal to the
Mississippi Supreme Court was limited in scope to a legal argument
pertaining to the sentencing phase of his initial trial.

Further, Holland failed to articulate the factual substance of
the subject federal habeas claim to the Mississippi Supreme Court.
None of the seven groups of facts stated above is set forth in
claim one of the Brief of Appellant - Initial Direct Appeal.
Accordingly, in light of new facts presented in claim one of
Holland's Amended Petition, the Court finds that the subject claim

is "substantially different" from the corresponding state court claim. See Kunkle, 352 F.3d at 988.

Based on these holdings, this Court finds that Holland failed to present the substance of claim one of his federal habeas petition to the Mississippi Supreme Court. This failure pertains to both the legal arguments and facts presented to that court. Accordingly, this Court further finds that claim one of the subject Amended Petition is unexhausted under the provisions of § 2254(b)(1)(A) and (c). Next considered is the status of claim one in light of this holding.

Respondents contend that Holland is in procedural default because he failed to exhaust state court remedies regarding claim one, _and_ because Holland is now barred by Mississippi state law from exhausting the claim. Again, the Court agrees with Respondents.

The second prong of Respondents argument, that Holland is now barred from exhausting claim one, is based on the Mississippi statute of limitations. The only avenue by which Holland could now exhaust his state court remedies is through an application for post-conviction collateral relief with the appropriate Mississippi court. Under § 99-39-5(2) of the Mississippi Code, "filings for post-conviction relief in capital cases ... shall be made within one (1) year after conviction." In the context of this statute, the word "conviction" is defined as the date that the mandamus

pertaining to a direct appeal is issued. <u>Puckett v. State of Mississippi</u>, 834 So.2d 676, 677-78 (Miss. 2002).

The mandamus pertaining to Holland's second and final direct appeal was issued on February 24, 1998, well over one year ago.[5] Further, § 99-39-27(9) of the Mississippi Code bars successive applications for post-conviction collateral relief, once a final judgment is entered on the initial application. <u>See also</u> <u>Cook v. State of Mississippi</u>, 910 So.2d 745, 747 (Miss. Ct. App. 2005)(holding that under § 99-39-27(9), successive motions for post-conviction relief are procedurally barred). Based on these two Mississippi code sections, the Court finds that Holland is in procedural default with regard to claim one of his Amended Petition.

Holland's only avenues for overcoming this procedural default are: (1) demonstrating cause for the default and resulting prejudice; or (2) demonstrating that a failure to consider claim one will result in a miscarriage of justice. <u>See</u> <u>Bagwell</u>, 372 F.3d at 755. Holland makes no effort to prove these factors in either his Amended Petition or his Reply in Support of Amended Petition. Further, the Court's independent analysis of the facts and law

---

[5]The Court notes that § 99-39-5(2) was amended effective July 1, 2000. The amendment reduced the subject limitations period from three years to one year. The Court need not determine which of the two limitations periods applies in this case because under either scenario, Holland is time barred from now seeking post-conviction collateral relief in a Mississippi state court.

pertaining to claim one indicates that neither of these factors is met.  The Court therefore finds that claim one must be dismissed as an unexhausted and procedurally barred claim.

**B.   claim 2: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where various prejudicial evidence having no probative value was improperly admitted at trial**

In claim two, Holland argues that the admission of three forms of evidence at his initial trial constituted constitutional violations.  The evidentiary rulings in issue are: (1) the admission of the video portion of an audio / video recording of the exhumation of King's body; (2) the admission of a pillow case found near King's grave site; and (3) the admission of a wash cloth found near King's grave site.  Holland claims that the admission of all three of these forms of evidence was argued before the Mississippi Supreme Court on his initial direct appeal in <u>Holland</u> I.  Holland also contends that Mississippi Supreme Court correctly found that the trial court erred by allowing the evidence to be admitted, but incorrectly found that the error was harmless.

This Court begins with considering Holland's argument pertaining to admission of the pillow case.  Respondents correctly contend that this argument must be rejected as an unexhausted and procedurally barred claim.  The Court has reviewed both the Brief of Appellant - Initial Direct Appeal and the rulings of the

Mississippi Supreme Court in <u>Holland</u> I.[6]   The issue of erroneous admission of a pillow case was not raised in Appellant's Brief, and was not addressed by the court in <u>Holland</u> I.   Therefore, this Court finds that Holland failed to exhaust his state court remedies with regard to the alleged erroneous admission of a pillow case at trial. <u>See</u> 28 U.S.C. § 2254(c).   The Court further finds that: (1) Holland is in procedural default on this claim; (2) he has shown no excusable cause of the default; and (3) he has not demonstrated that failure to consider this claim would result in a miscarriage of justice.   Accordingly, Holland is not entitled to habeas relief based the admission into evidence of the subject pillow case. <u>See</u> <u>Bagwell</u>, 372 F.3d at 755.

The Court now focuses on Holland's arguments pertaining to the wrongful admission of the video tape and the wash cloth.   Holland's argument on this issue *appears* to be based on prosecutorial misconduct.[7]   That is, Holland contends that the prosecutor's successful efforts in admitting this evidence at trial "so infected

---

[6]The issue of erroneous admission of evidence is addressed on pages 48 through 52 of the Brief of Appellant - Initial Direct Appeal, and on pages 863 through 865 of <u>Holland</u> I.

[7]The Court states that Holland "appears" to base this argument on prosecutorial misconduct because he refers to the prosecutor's inappropriate actions and/or comments numerous times in applicable portions of the Amended Petition. <u>See</u> Amended Petition, p. 63, ¶¶ 208-12, & p. 64, ¶¶ 213-15.   However, it is not completely clear to the Court whether this is the *sole* basis of Holland's argument on the issue.

the trial with unfairness as to make the resulting conviction a denial of due process." Amended Petition, p. 63, ¶ 210.

Respondents begin by again asserting that this claim must be dismissed as an unexhausted claim. Although the Mississippi Supreme Court did not address the admission of this evidence under the purview of prosecutorial misconduct, a reading of page fifty-one of the Brief of Appellant - Initial Direct Appeal, indicates that Holland did in fact make an argument on this issue, albeit very brief. This Court therefore finds that Holland did exhaust his state court remedies on the issues of prosecutorial misconduct regarding successful efforts to admit the video tape and the wash cloth. See Bagwell, 372 F.3d at 755 (holding that "[t]o exhaust, a petitioner must have fairly presented the substance of his claim to the state courts.").

Holland argues that the video tape should not have been admitted into evidence because the graphic nature of its contents prejudiced the jury against him. Similarly, he argues that the foul odor emanating from the wash cloth unduly prejudiced the jury. Holland asserts that these two forms of evidence were unnecessarily cumulative because neither was offered to prove anything that could not be proven by less prejudicial forms of evidence offered at trial by the prosecution.

In Holland I, the Mississippi Supreme Court addressed the video tape and wash cloth issue in the context of the probative

value of the evidence versus its prejudicial effect. Holland I, pp. 863-65.  The Mississippi Supreme Court held that the trial court erred by admitting the evidence, but that the error was harmless. Id. at 865.  For purposes of analyzing the subject Amended Petition, this Court operates under the assumption that admission of the evidence in question was in fact erroneous.

In Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), the United States Supreme Court held that in analyzing a prosecutorial misconduct habeas claim, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (Citing Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).  This Court finds that the prosecution's successful attempts to introduce the video tape and the wash cloth at trial did not so infect Holland's trial with unfairness as to make his conviction a denial of due process. Further, erroneous admission of the video tape and the wash cloth was the fault of the trial judge for allowing the evidence; it was not the fault of the prosecution for offering the evidence. Holland's prosecutorial misconduct argument is without merit.

To the extent that Holland is contending he is entitled to habeas relief because the Mississippi Supreme Court found that admission of the video tape and the wash cloth at trial was

harmless error, that argument also must fail.[8]   In <u>Jackson v. Johnson</u>, 194 F.3d 641 (5th Cir. 1999), the Fifth Circuit set forth a standard to measure whether habeas relief can be granted based on the erroneous admission of evidence at trial.   The <u>Jackson</u> court held:

> In habeas actions, [a federal court does] not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding. Thus, the erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a "crucial, critical, and highly significant" role in the jury's determination.

<u>Id.</u> at 656 (citation omitted).

The Mississippi Supreme Court based its harmless error finding on the fact that other horrific evidence was entered without objection, and because the overwhelming weight of the evidence indicated Holland's guilt. <u>Holland</u> I, p. 864 (regarding the video tape), & p. 865 (regarding the wash cloth).   After reviewing relevant portions of the record, this Court agrees with the Mississippi Supreme Court.   Accordingly, Holland's prayer for habeas relief pertaining to this issue must be denied because the Court finds that admission of the video tape and the wash cloth did not deny Holland a constitutionally fair proceeding.

---

[8]As stated above in footnote 7, Holland's arguments on this issue appear to be based on prosecutorial misconduct. However, under a liberal construction, the scope of his arguments could also include alleged error in the rulings of the Mississippi Supreme Court.

Finally, Holland makes a brief and unsupported argument that "[t]he cumulative effect of the federal constitutional error ... warrants the grant of the Writ." Amended Petition, p. 65, ¶ 219. The Court notes that under claim twelve of the Amended Petition, Holland asserts a more detailed argument pertaining to the cumulative effect of alleged errors. His cumulative effect argument is addressed below under claim twelve.

For all of the reasons stated above, the Court finds that Holland is not entitled to habeas corpus relief under claim two of his Amended Petition.

**C.   claim 3: Petitioner was denied his constitutional rights to the effective assistance of counsel under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution at the trial proceeding**

In his third claim, Holland asserts that he is entitle to habeas relief based on ineffectiveness of legal counsel. Specifically, Holland's ineffective assistance of counsel argument is built upon the alleged inadequate performance of Earl Stegall, the attorney who represented him at the initial trial and on the initial direct appeal.

The standard by which to measure an ineffective assistance of counsel claim in a habeas proceeding was set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Strickland Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the

> defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors
> so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth
> Amendment. Second, the defendant must show that the
> deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as
> to deprive the defendant of a fair trial, a trial whose
> result is reliable. Unless a defendant makes both
> showings, it cannot be said that the conviction or death
> sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.

Id. at 687.

Applying the Strickland tests, a federal court must consider whether the attorney's representation was reasonable under all of the circumstances presented at the trial proceeding, as well as other relevant proceedings. Strickland, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The burden is on the defendant to "show that there is a *reasonable probability*[9]that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 (emphasis added; footnote added).

Holland makes many general and unsupported arguments in his ineffective assistance of counsel claim. Amended Petition, p. 66, ¶ 222 (stating that "[i]t appears that little, if any, advance preparation was made to develop a strategy and obtain witnesses to contradict the testimony of the State's witnesses...."); p. 74, ¶ 246 (stating that "the totality of the attorney's errors made the

---

[9]The Strickland Court rejected the "more likely than not" standard of proof as too burdensome. Strickland, 466 U.S. at 493.

proceeding fundamentally unfair...."); p. 74, ¶ 249 (stating that "trial counsel was doing little to nothing at trial."). The Court points this out not to berate counsel for Holland, but to aid in setting the parameters for this ineffective assistance of counsel analysis. Although Holland asserted several grounds for ineffective assistance of counsel in his Petition for Post-Conviction Relief with the Mississippi Supreme Court (Holland III, pp. 4-6), only the grounds specifically asserted in the subject Amended Petition may now be considered by this Court. Fuentes v. Dretke, 89 Fed.App'x 868, 875 (5th Cir. 2004)(holding that a claim for relief is waived if it is not asserted in the federal petition for habeas corpus relief).

The general allegations cited above are not sufficient to encompass all of the ineffective assistance of counsel arguments asserted by Holland at the state court level. The only arguments which are adequately asserted and developed in the subject Amended Petition to warrant consideration herewith are: (1) the failure to prepare an adequate defense to the testimony of Dr. Paul McGarry, the pathology expert for the State; (2) the failure to move for an expert witness to review McGarry's expert report, to review the evidence relied upon by McGarry, and to rebut McGarry's testimony at trial; (3) the failure to object to admission of certain forms of evidence at trial; and (4) the failure to assert objections at trial in a timely manner.

First considered is the allegation that Stegall did not adequately prepare for the testimony of McGarry. Holland's argument is summarized as follows:

> 223. The most glaring of trial counsel's failures was his total lapse in not preparing any defense to the testimony of Dr. McGarry, the State pathologist.
> 224. The ineffectiveness of trial counsel and the prejudicial effect upon Petitioner was fully noted by the Mississippi Supreme Court as evidenced by their statement in commenting on trial counsel's failure to take advantage of the trial court's willingness to provide counsel with an "unlimited" opportunity during trial to interview McGarry.
> 225. The Supreme Court noted "Holland chose not to exercise this opportunity for reasons not made known, and, thus he rendered himself less informed or uninformed about what he was and is not claiming. This Court therefore holds him to that choice." Holland v. State, 587 So.2d 848, 868 (Miss. 1991).

Amended Petition, p. 66, ¶¶ 223-25.

The Court notes that quoted paragraph 225 of Holland's Amended Petition relates to an analysis in Holland I of whether a new trial was warranted because of alleged discovery violations pertaining to McGarry's testimony. That analysis *did not* pertain to an ineffective assistance of counsel claim. The only phase of the state court litigation at which Holland specifically asserted an ineffective assistance of counsel argument was in his Petition for Post-Conviction Relief, which was addressed by the Mississippi Supreme Court in Holland III. To effectively analyze the ineffective assistance of counsel argument, this Court must consider in conjunction with one another, the holdings in Holland

33

I, the holdings in <u>Holland</u> III, and the record from the state court proceedings.

As stated above, in analyzing an alleged discovery violation claim pertaining to McGarry's testimony, the <u>Holland</u> I court commented on the performance of Holland's trial counsel. The substance of the comments follows.

> At trial, the State called McGarry to testify about the autopsy he performed on Krystal. At one point, after testifying about Krystal's injuries and bruises, the State asked McGarry:
>> Doctor, do you have an opinion about the amount of time it would take for such bruising to form?
>
> Vol. XII, at 2058; <u>see also</u> <u>id.</u> at 2186-87 (further related questioning). Holland objected to this question on the ground that:
>> the ["substance" of the] doctor's opinions as to the time when [Krystal's] bruises began to form, which would lead to the doctor's opinions as to the time when the injuries must have been inflicted, were never disclosed [during] discovery.
>>                    * * * * *
> After extensively debating this issue outside the jury's presence, the judge halted the trial and granted Holland an "unlimited opportunity" to interview McGarry. The interview transpired overnight. Vol. XII, at 2059-88.
>
> The next morning, after the interview, the debate continued. The judge ultimately overruled Holland's motion-after which the following exchange transpired:
>> JUDGE VLAHOS: You will agree for the motion for mistrial or exclude the evidence, that on yesterday evening you were given ample opportunity to interview with Dr. McGarry.... [Y]ou visited with him for about <u>*ten or fifteen minutes*</u>; is that correct?
>> HOLLAND: <u>*That is correct*</u>. We did have an opportunity to talk with him.
>> JUDGE: And an unlimited opportunity; is that correct?
>> HOLLAND: Yes.
>
> <u>Id.</u> at 2095-98 (emphasis added).

34

Holland I, at 866.   The Holland I court commented further that "Holland merely questioned McGarry for '*about ten or fifteen minutes*' and for the purpose of merely ascertaining how long the State had known about his opinions." Id. at 867 (citing Vol. XII at 2071-82 & 2097-98)(emphasis added).

A reading of the holdings in Holland I would indicate that Stegall interviewed McGarry for only ten to fifteen minutes, and that the subject matter covered by the interview was very limited. A review of the actual record of the trial transcript indicates otherwise.

This Court finds that the Holland I court was incomplete and inaccurate in its quote from pages 2095 through 2098 of the trial court record.   A complete and accurate reading of the record follows, beginning with a dialogue on December 8, 1997, between the trial court and Stegall.

> BY THE COURT: Your other announcement was that you have not finished talking to [McGarry].  I believe you only had about ten or fifteen minutes.
> BY MR. STEGALL: Yes, I haven't finished talking to him about the times and so forth.
> BY THE COURT: About the times?
> BY MR. STEGALL: Yes, sir.  That's what I was talking to him about.
> BY THE COURT: But, you had visited with him about ten or fifteen minutes?
> BY MR. STEGALL: Yes, sir, that is correct.

R., Holland I at 2076-77.

> BY THE COURT: .... Mr. Stegall, would you be available to visit with Dr. McGarry at 8:00 o'clock tonight.  Would you want to eat first?

35

BY MR. STEGALL: I would like to do it right now if he doesn't mind.

R., <u>Holland</u> I at 2080.

BY THE COURT: We will take a recess and y'all be back at 9:00 o'clock in the morning. You will have ample opportunity to speak with Dr. McGarry.

R., <u>Holland</u> I at 2086. The court then recessed for the day, and the trial resumed on the morning of December 9, 1987.

BY THE COURT: You will agree for the motion for mistrial or exclude the evidence, that on yesterday evening you were given ample opportunity to interview with Dr. McGarry and you chose to visit with him last evening instead of this morning. No. I suggested that you eat and then visit with him about 8:00 o'clock and you said that you wanted to visit with him at that moment, which I think was around 6:00 o'clock. After you *had previously* visited with him for about ten or fifteen minutes; is that correct?[10]

BY MR. STEGALL: That is correct. We did have the opportunity to talk with him.

_____

[10]This Court stated above that the <u>Holland</u> I court was both incomplete and *inaccurate* in its quote of the trial record. A reading of the quotes from the trial transcript presented herein reveals the obvious "incomplete" nature of the quote presented in <u>Holland</u> I. The "inaccurate" nature of the quote is less obvious. The <u>Holland</u> I court omitted the phrase "had previously" from the sentence immediately preceding this footnote. This omission, which was not indicated by ellipses or any other symbol from which a reader could determine that phrase had been eliminated, completely changed the meaning of the sentence. As quoted in <u>Holland</u> I, the dialogue reads: "You will agree for the motion for mistrial or exclude evidence, that on yesterday evening you were given ample opportunity to interview with Dr. McGarry.... [Y]ou visited with him for about ten or fifteen minutes, is that correct?" <u>Holland</u> I, p. 866. This quote indicates that the total interview lasted only ten to fifteen minutes. By including the phrase "had previously" in the sentence, as well as including other contextual portions of the record presented above, it is clear that the "ten or fifteen minute" interview of McGarry was Stegall's *first* interview of him, not the *only* interview.

36

> BY THE COURT: And an unlimited opportunity; is that correct?
> BY MR. STEGALL: Yes.

R., _Holland_ I at 297-98 (emphasis added; footnote added).

Although Holland's argument is somewhat sketchy on this issue, he appears to argue that Stegall failed to adequately interview McGarry after the issue arose regarding timing of the victim's wounds, even though the trial court offered him a liberal opportunity to conduct an interview.  Reading the excerpt of the trial transcript quoted in _Holland_ I tends to support Holland's argument.  However, reading the relevant portion of the transcript in total indicates otherwise.  The "ten to fifteen minute" interview referenced by the _Holland_ I court was Stegall's _initial_ interview of McGarry, it was not his _only_ interview with McGarry. _See supra_, footnote 10.  Based on the record, Stegall took the opportunity to further interview McGarry on the evening of December 8, before the trial resumed on December 9.  Although the record is not clear as to the length of the interview, it is clear that Stegall took advantage to the offer of the trial court to interview McGarry on a purportedly "unlimited" basis on the evening of December 8.

Holland also raised the issue of ineffective assistance of counsel with the Mississippi Supreme Court in his Petition for Post-Conviction Relief, which was addressed in _Holland_ III.  Regarding the subject issue, the _Holland_ III court stated "the

37

record reflects that trial counsel was afforded ample opportunity to interview Dr. McGarry prior to the testimony and even stated to the court, 'I'm prepared for cross-examination of Dr. McGarry.'" Holland III, p. 5. Based on this quote from Holland III, this Court infers that the Mississippi Supreme Court realized its error in the Holland I analysis pertaining to whether Stegall adequately interviewed McGarry. In accordance with the holdings presented in Holland III and in light of the totality of the circumstances presented by the record, this Court finds that Stegall adequately prepared for McGarry's testimony. Therefore, this ineffective assistance of counsel argument fails under the Strickland standard.

Holland's second ineffective assistance of counsel argument is that Stegall failed to move for an expert witness to review McGarry's expert report, to review the evidence relied upon by McGarry, and to rebut McGarry's testimony at trial. Rejecting this same argument, the Holland III court stated "Holland asserts that counsel should have sought funding for his own pathology expert, but he fails to include the affidavit of any professional who would dispute findings of the State's expert. The benefit of such a defense expert is therefore speculative at best." Holland III, p. 5.

This Court agrees with the Holland III court. Under the second Strickland test, Holland must come forth with evidence and/or arguments indicating that the alleged deficient performance

38

prejudiced his defense, i.e., that but for Stegall's error, a reasonable probability exists that the outcome of the trial would have been different.  Holland has presented no arguments and has cited no evidence which would satisfy this test.

In fact, the record indicates that additional expert testimony in the field of pathology supported McGarry's conclusions.  The trial court arranged for an independent pathologist, Dr. David Steckler, to review McGarry's opinions. R., Holland I at 2288. Steckler provided no opinions that conflicted with McGarry's opinions. R., Holland I at 2288-92.  Under these facts, this Court rejects Holland's ineffective assistance of counsel argument based on the failure to retain a pathology expert.

Holland's third brief and relatively unsupported ineffective assistance of counsel argument is that Stegall erred by failing to object to admission of certain forms of evidence at trial.  Because Holland failed to elaborate on the basis of this claim, the Court must refer to the arguments made in the Petition for Post-Conviction Relief. In the Petition, Holland states:

> A photograph of King, white shorts, pillow case and a concrete bag respectively were in such a state as to shock the jury and were more prejudicial than probative. ... This Court found the admission of the cloth error. Relying on the Court's earlier analysis, the white shorts, concrete bag, cloth and pillow case should have all been excluded.

Petition for Post-Conviction Relief, p. 23.  Holland failed to explain why the shorts, the concrete bag and the pillow case should

have been excluded for the same reasons justifying exclusion of the cloth.  Further, Holland provided no specific reasons to this Court as to why the photograph should have been excluded, or why admission of any of the evidence prejudiced his defense.  The Court must therefore reject this ineffective assistance of counsel claim.

The fourth and final ineffective assistance of counsel argument is that Stegall erred by failing to assert objections at trial in a timely manner.  The Court is left to assume that Holland is referring to the timing of the objection to McGarry's testimony.  For the same reason stated by the Mississippi Supreme Court in <u>Holland</u> III, this Court rejects Holland's argument on this issue.  <u>See</u> <u>Holland</u> III, p. 5 (holding that Stegall was not dilatory in objection to McGarry's testimony).

Based on the analyses presented above, this Court finds that all of Holland's ineffective assistance of counsel arguments are without merit.  Habeas relief cannot be granted on this claim.

**D.   claim 4: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where the prosecutor improperly excused two prospective jurors using peremptory challenges**

Holland contends that his death sentence should be overturned because the prosecution exercised two _peremptory challenges_ for jurors that expressed misgivings about imposing the death penalty.  Supporting this position, Holland cites cases in which the sentence of death was overturned because prospective jurors were excluded

40

*for cause* based on their personal views on the death penalty.   The Court is aware of no cases which limit a prosecutor's ability to exercise peremptory challenges under the subject circumstances. Accordingly, this claim must be dismissed because Holland has cited no clearly established federal law in support of his argument.

**E.   claim 5: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where the Petitioner was denied his right to be re-sentenced by a fair and impartial jury**

Holland asserts several specific arguments in support of the proposition that he was denied the right to be re-sentenced by a fair and impartial jury.   However, before addressing these specific arguments, the Court must dispose of Holland's general contention that the <u>Holland</u> II court necessarily erred in its rulings because it "did not provide any analysis citing specifically to any United States Supreme Court precedent." Amended Petition, p. 95, ¶ 309. This issue was directly addressed by the United States Supreme Court in <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2003), in which it held:

> A state-court decision is "contrary to" our clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405–406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Avoiding these pitfalls does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long

as neither the reasoning nor the result of the state-court decision contradicts them.

(Emphasis in original). Based on this binding holding, the Court rejects Holland's general argument that the Mississippi Supreme Court erred by failing to cite United States Supreme Court law on the subject issue, or any other issue. The Court now proceeds with analyzing Holland's fact specific arguments on the issue of fair trial at the re-sentencing phase.

Holland first contends that he was denied a fair trial because venue for the re-sentencing trial should have been changed from Harrison County, Mississippi, as it had been for the initial trial. This issue must be analyzed in the context of the timing of three relevant events. First, the murder in issue occurred on September 12, 1986. On December 12, 1987, Holland was found guilty of capital murder during the course of a rape, and sentenced to death in a trial held in Vicksburg, Warren County, Mississippi, before a jury selected from Warren County residents. After the death sentence was overturned by the Mississippi Supreme Court, a second trial pertaining to sentencing occurred during late-March through mid-April 1993. Holland was again sentenced to death on April 16, 1993, in Gulfport, Harrison County, Mississippi, before a jury selected from Harrison County residents. Holland argues that venue should have been changed because media coverage tainted the jury which re-sentenced him to death in April of 1993. In light of these facts, the Court considers applicable case law.

42

"Pervasive" media coverage, in and of itself, may in extreme cases give rise to an inference of a constitutionally unfair criminal trial. Rideau v. State of Louisiana, 373 U.S. 723, 726, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).  However, the finding must be based on a conclusion that "[a]ny subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality." Id.; see also, Busby v. Dretke, 359 F.3d 708, 725-26 (5th Cir. 2004)(citation omitted)(holding that prejudice may be presumed only in "an extreme situation of inflammatory pretrial publicity that literally saturated the community in which [the defendant's] trial was held.").

The above standard applies when a convicted defendant attempts to prove a tainted jury *without* citation to particular *voir dire* testimony from prospective jurors.   Even in cases where the defendant's arguments are based on *voir dire* testimony of prospective jurors, "[q]ualified jurors need not ... be totally ignorant of the facts and issues involved." Dobbert v. State of Florida, 432 U.S. 282, 302, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)(citation omitted).   The Dobbert Court elaborated on the issue as follows:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

Id. (citations and quotation marks omitted).  "[E]xtensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair." Id. at 303.  A person who is reasonably suspected of committing a heinous crime cannot expect to remain anonymous in the eyes of the public. Id.  To support a finding of an unfair trial, the trial atmosphere must be "utterly corrupted by press coverage." Id. (citation omitted).

Applying this law to the subject case, the Court begins with considering the level of pretrial publicity.  As stated above, the trial for Holland's re-sentencing occurred in March and April of 1993.  As noted by the Holland II court, all television coverage of the subject murder began in 1987, and ended in 1988. Holland II, p. 336.  The majority of newspaper articles on the issue were published beginning in September of 1986, and ending in May of 1988. Id.  One newspaper article pertaining to Holland's re-sentencing trial was published in September of 1991. Id.  This Court has been made aware of no other media coverage pertaining to Holland's case.

The Court finds that the extent of media coverage, in and of itself, is not sufficient to support a finding that Holland suffered an unfair re-sentencing trial.  This finding is based in part on the moderate level of reported coverage of the crime, and in part on the time lapse between the last coverage event and the

re-sentencing trial. See, Coble v. Cockrell, 80 Fed.App'x 301, 313 (5th Cir. 2003)(holding that a lapse of six months between the end of media coverage and the beginning of trial was an indicator that no pervasive pretrial publicity existed).

Next considered under the issue of pretrial publicity is the effect of the publicity on the jurors in Holland's re-sentencing trial. If a juror can set aside any preconceived opinion about a criminal defendant and base a verdict on the evidence, then a constitutionally adequate trial may be had. Dobbert, 432 U.S. at 302.

Respondents recognize that a total of twelve venire persons had prior knowledge of the subject case. Memorandum in Support of Answer to Amended Petition, pp. 108-10. Also, as the Mississippi Supreme Court recognized in Holland II, only two of the selected jurors had previous knowledge of the case. Holland II, p. 337. The two jurors with prior knowledge were Jennifer Larson and Joan Scarbrough.

Although Larson initially represented that she may have misgivings about her ability to be unbiased toward Holland, she ultimately stated that she could be fair in her decision. Tr., Holland II at 676 (Larson stating during voir dire examination that she could vote either for or against the death penalty). Scarbrough unequivocally stated that she could disregard any news coverage that she had been exposed to, and base her verdict on the

45

evidence presented at court. Id. at 785.  Based on these facts, the Court finds that pretrial publicity did not adversely affect or prejudice the jurors in Holland's re-sentencing trial.

Consistent with the above findings of fact, this Court holds that the trial atmosphere surrounding Holland's re-sentencing trial was not "utterly corrupted by press coverage." See Dobbert, 432 U.S. at 303.  The Court therefore rejects Holland's contention that the failure to change venue for his re-sentencing trial was a constitutional violation.

Holland further argues that the venue "error was compounded when the trial court denied Petitioner's motion for individual sequestered *voir dire* of all potential jurors ..., and denied Petitioner[']s motion for [an] information questionnaire to be handed to venire persons when they appeared at court." Amended Petition, p. 89, ¶ 281.   The Holland II court rejected this argument by finding that Holland cited no binding or persuasive authority to support his position. Holland II, p. 337.  The Holland II court also found that Holland was in fact granted individual sequestered *voir dire* when necessary, and that Holland was not restricted in his opportunity to question venire members. Id.  This Court agrees with the Holland II court, and finds this claim to be without merit.

Holland's next argument is that the entire jury venire was tainted because of a statement made by venire member Paul Joseph,

who was a deputy sheriff.  The *voir dire* colloquy between Joseph

and the state trial court follows.

> BY THE COURT: Mr. Joseph.
> BY MR. JOSEPH: Yes, sir.
> BY THE COURT: Do you have any answers that you must
> give to any of the questions that were previously asked?
> BY MR. JOSEPH: Yes, sir.  I have personal and
> professional knowledge of the crime at the time that it
> happened.
> BY THE COURT: You were involved in the
> investigation of it?
> BY MR. JOSEPH: Not the investigation but I was in
> the immediate vicinity the day they discovered the body.
> I also seen the photographs.
> BY THE COURT: I understand.
> BY MR. JOSEPH: Yes, sir.
> BY THE COURT: I don't know which ones you saw, but
> the guilt phase has been decided.
> BY MR. JOSEPH: Uh, huh.
> BY THE COURT: And we're at the sentencing phase now.
> Is there anything that you feel that is in your knowledge
> that would effect your sentencing hearing?
> BY MR. JOSEPH: Yes, sir.
> BY THE COURT: You do?
> BY MR. JOSEPH: I was in complete agreement with the
> first sentence that he got and feel –
> BY MR. DAVIS: Objection –
> BY THE COURT: Just a second.  Let me see.  Mr.
> Joseph, you have a fixed opinion about the situation?
> BY MR. JOSEPH: Yes, sir, I do.
> BY THE COURT: Any you can't set it aside?
> BY MR. JOSEPH: No, sir.
> BY THE COURT: And you can't – whatever it is that
> you might know about it you can't just set that aside and
> base your verdict on this?
> BY MR. JOSEPH: No, sir, I can't.

Tr., <u>Holland</u> II at 831-32.  Although not pertinent to the subject

issue, the Court notes that Joseph was dismissed for cause.

To determine whether Holland was denied a fair trial based on

the jury venire's exposure to Joseph's comments, this Court looks

to the United States Supreme Court case of <u>Romano v. Oklahoma</u>, 512

47

U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994).   In <u>Romano</u>, the
Supreme Court found that neither defendant Romano's Eighth
Amendment nor his Fourteenth Amendment rights were violated when
the jury was made aware of evidence of an overturned death sentence
imposed on Romano in another case. <u>Id.</u> at 9-14.   The <u>Romano</u> Court
dismissed petitioner's Eighth Amendment argument by finding that
the mere admission of irrelevant and prejudicial evidence [does not
require] the overturning of a death sentence." <u>Id.</u> at 11.
Regarding a Fourteenth Amendment violation, the <u>Romano</u> Court held
that "[t]he relevant question ... is whether the admission of
evidence regarding petitioner's prior death sentence so infected
the sentencing process with unfairness as to render the jury's
imposition of the death penalty a denial of due process." <u>Id.</u> at 12
(citations omitted).

<u>Romano</u> is factually distinguishable from the subject case
because it involves the admission of evidence of a prior death
sentence, rather than a statement made by a prospective juror in
the *voir dire* process.   This Court nevertheless finds its holdings
applicable because both <u>Romano</u> and the subject case involve
exposure of the jury to a prior overturned death sentence.

Based on the holdings of <u>Romano</u>, this Court finds that
Joseph's statements did not deny Holland his right to a fair and
impartial re-sentencing jury.   As considered by the Mississippi
Supreme Court in <u>Holland</u> II, Joseph never specifically stated to

the jury venire the sentence that Holland received in his first trial. Holland II, p. 339.  Also, the court instructed the jury that their decision must be based on evidence. Id. at 340.  The selected jurors stated in the *voir dire* process that they could arrive at a decision based on the evidence, rather than on bias or prejudice. Id. 340.  Finally, this Court agrees with the finding by the Holland II court that "[t]here was no evidence at trial that the jurors even heard Joseph, as Holland did not ask to examine the jurors about the remark." Id.  Applying the law to these facts, the Court holds that Joseph's comments to the jury venire did not corrupt Holland's constitutional guarantee to a fair re-sentencing jury.

Holland's final argument under claim five is that the state trial court erred by failing to dismiss prospective juror Carolyn Randolph for cause.  Holland ultimately exercised a peremptory challenge to exclude Randolph from the jury.  Per Holland, constitutional error resulted from this scenario because the peremptory challenge used on Randolph could have been used to exclude other jurors from the panel.[11]  Based on the crystal-clear holdings in Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), the very case cited by Holland in support of his claim, this Court finds that the claim is without merit.

---

[11]In this analysis, this Court assumes *arguendo* that the trial court erred by failing to strike Randolph for cause.  However, the Court is not making a definitive ruling on that issue.

The Ross Court held:

> Petitioner was undoubtedly required to exercise a
> peremptory challenge to cure the trial court's error. But
> we reject the notion that the loss of a peremptory
> challenge constitutes a violation of the constitutional
> right to an impartial jury. We have long recognized that
> peremptory challenges are not of constitutional
> dimension. They are a means to achieve the end of an
> impartial jury. So long as the jury that sits is
> impartial, the fact that the defendant had to use a
> peremptory challenge to achieve that result does not mean
> the Sixth Amendment was violated. We conclude that no
> violation of petitioner's right to an impartial jury
> occurred.

Id. at 88 (internal footnote, and internal and end citations

omitted).  In the subject case, Holland has not convinced the Court

that the jury which sat at his re-sentencing trial was partial or

biased against him.  Further, Randolph, the alleged unqualified

juror, ultimately did not sit on the jury.  Therefore, Holland's

Sixth Amendment argument fails. See United States v. Martinez-

Salazar, 528 U.S. 304, 316-17, 120 S.Ct. 774, 145 L.Ed.2d 792

(2000)(holding that no constitutional error results so long as the

trial court's error in failing to dismiss an improper juror for

cause does not result in the seating of that potential juror on the

jury).

With regard to the Fourteenth Amendment, the Ross Court held:

> Because peremptory challenges are a creature of statute
> and are not required by the Constitution, it is for the
> State to determine the number of peremptory challenges
> allowed and to define their purpose and the manner of
> their exercise. As such, the "right" to peremptory
> challenges is "denied or impaired" only if the defendant
> does not receive that which state law provides.

Id. at 89 (internal citations omitted).  Holland's argument under the Fourteenth Amendment also fails because he has pointed the Court to no state law violation by the failure of the trial court to strike Randolph for cause.

Based on the above analyses, the Court finds meritless all arguments asserted by Holland under claim five of his Amended Petition.  Claim five must be denied.

**F.   claim 6: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution at his capital re-sentencing hearing where the State was allowed to present evidence of aggravating factors and proof of same beyond a reasonable doubt but the Petitioner was precluded from presenting any evidence to rebut the evidence presented by the State**

In claim six, Holland argues that he was not allowed to introduce evidence at his re-sentencing trial in rebuttal to evidence presented by the prosecutor.  The evidence in issue pertains to aggravating factors that must be considered in the sentencing process of a death penalty case.  Specifically, Holland argues in his Amended Petition that he was entitled to introduce evidence which tended to rebut a conclusion that King's "murder was committed during the commission of a rape."[12] Amended Petition, p. 105, ¶ 347.

---

[12]Holland made many other arguments related to this issue in his second direct appeal.  See Holland II, pp. 320-29.  However, this Court will consider only the arguments specifically asserted in the Amended Petition.  See Fuentes, 89 Fed.App'x at 875.

The first step in analyzing this issue is setting forth the exact nature of the crime for which Holland was convicted. Holland was convicted of violating Miss. Code Ann. § 97-3-19(2)(e), which makes killing a person while in the commission of rape a capital offense. Holland was found guilty of that crime during his initial trial in December of 1997, and the Mississippi Supreme Court upheld the conviction in Holland I. In issue is whether the re-sentencing trial court erred by barring Holland from introducing evidence which was inconsistent with the guilty verdict; i.e., whether the court erred by barring evidence which rebutted that Holland killed King while raping her.

To resolve this issue, the Court need look no further that the holdings of the United States Supreme Court in Oregon v. Guzek, ___ U.S. ___, 126 S.Ct. 1226, 163 L.Ed.2d 1112 (2006). In Guzek, the defendant was convicted of capitol murder and sentenced to death. In the initial appeal, the conviction was affirmed, but the death sentence was reversed. The Defendant was again sentenced to death, and again appealed the sentence. The sentence was again reversed. The defendant was then sentenced to death a third time, and a third appeal resulted. All of the aforementioned proceedings occurred in Oregon state court. On the third appeal, the Oregon Supreme Court again reversed the sentence, but requested review of the ruling by the United States Supreme Court. The United States Supreme Court granted review.

The final unresolved issue at the state court proceedings in _Guzek_ was whether the defendant should be allowed to introduce alibi evidence at his _sentencing trial_ which proved that he did not commit the murder in issue. The Oregon Supreme Court found that under the United States Constitution, such evidence was admissible.[13] Reversing that decision, the United States Supreme Court found that a criminal defendant is not entitled to produce evidence at the sentencing phase that is inconsistent with a finding of guilt for the underlying crime. _Guzek_, 126 S.Ct. at 1230-31. A defendant may introduce mitigating evidence at the sentencing phase regarding _how_ a crime was committed, but not evidence pertaining to _whether_ the crime was committed. Id. at 1321 (finding that evidence is admissible which tends "to show _how_, not _whether_, the defendant committed the crime. (emphasis in original)), & at 1232 (holding that "sentencing traditionally concerns _how_, not _whether_, a defendant committed the crime." (emphasis in original)). The Supreme Court further based its holding on the principle that matters previously determined in a legal proceeding typically cannot be collaterally attacked. Id. (citation omitted).

---

[13]The Oregon Supreme Court relied on _no_ Oregon state law in making their decision. The decision was based solely on the provisions of the Eighth and Fourteenth Amendments to the United States Constitution.

Based on the holdings in Guzek, this Court finds that the trial court in Holland's re-sentencing trial did not constitutionally err by barring introduction of evidence suggesting that Holland did not murder King while in the act of raping her. That evidence relates to *whether* Holland committed the crime for which he was convicted, not *how* the crime was committed. Further, barring the introduction of this evidence did not prevent Holland from introducing other evidence of mitigating circumstances enumerated in § 99-19-101(6) of the Mississippi Code. This argument is not well taken.

Holland next contends that Judge Vlahos erred when he "opened jury selection telling the prospective jurors the 'issue as I've stated to you as to whether or not Mr. Holland is guilty of a capital offense has already been decided. On a former day a jury found beyond a reasonable doubt that Mr. Holland did kill and murder Krystal King while engaged in the commission of the crime of felony rape.'" Amended Petition, pp. 105-06, ¶ 350 (citing Tr., Holland II at 547). Holland continues by stating that "[t]his statement of the Court told every juror who ultimately sat that Petitioner was eligible for the death penalty thus taking away from them one of the questions they were supposedly seated to consider." Id. at p. 106, ¶ 351.

Holland misconstrues the law. Under Mississippi law, "convictions of certain crimes render the defendant death

54

eligible." <u>Branch v. State</u>, 882 So.2d 36, 74 (Miss. 2004).  Once Holland was convicted of murder during the commission of a rape, he was "death eligible."   That is not to say that he would automatically suffer the death penalty.   To impose the death penalty, the re-sentencing jury was required to weigh aggravating and mitigating circumstances pursuant to § 99-19-101 of the Mississippi Code.  Based on the record before this Court, that is exactly the manner in which the re-sentencing jury reached its death penalty decision.  The Court therefore finds that Holland's constitutional rights were not violated by Judge Vlahos' introductory statements to the jury *venire*.

**G.    claim 7: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where the prosecutor improperly expressed his personal opinions and invoked the position of his office to secure the death penalty against the Petitioner**

Claim seven is based on allegedly improper comments made to the jury by the prosecutor during Holland's re-sentencing trial. The alleged improper comments are that "[t]he district attorney stated, 'I'm the chief law enforcement officer for a three county area.  I take my job seriously.[']  He later stated, 'I had the job of charging this crime.  That has been reviewed, and we're here today in court because this is one of those rare cases.'" Amended Petition, p. 111, ¶ 372 (citing <u>Holland</u> II, p. 347).[14]

---

[14]Holland made several other arguments pertaining to prosecutorial misconduct in his second direct appeal. <u>See</u> <u>Holland</u>

Addressing this issue, the <u>Holland</u> II court held:

> On the merits, it is improper for a district attorney, in argument to the jury, to use his position or function as a basis for convicting or more severely sentencing a defendant. <u>United States v. Garza</u>, 608 F.2d 659, 663 (5th Cir.1979). More specifically, a prosecutor may not comment on the fact that he has "only sought death in rare instances such as this one." <u>Brooks v. Kemp</u>, 762 F.2d 1383, 1410 (11th Cir.1985), <u>vacated on unrelated grounds</u>,478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), <u>cert. denied</u>, 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 744 (1987). This argument implies that the district attorney has made the judgment already and that his decision should be binding and persuasive to the jury. <u>Brooks</u>, 762 F.2d at 1410.

<u>Holland</u> II, p. 347. The <u>Holland</u> II court went on to properly hold:

> This error does not automatically result in reversal. This statement is reviewed to see the magnitude of prejudice, the effectiveness of the curative instruction, and the strength of the evidence of the defendant's guilt. <u>United States v. Goff</u>, 847 F.2d 149, 165 (5th Cir.1988), <u>cert. denied</u>, <u>Kuntze v. U.S.</u>, 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 341 (1988).

<u>Id.</u>

Applying the law to the facts of this case, the <u>Holland</u> II court considered the timing of the statements, the context of the statements and the instructions given by the trial court. <u>Id.</u> at 347-48. Based on these circumstances, the <u>Holland</u> II court found that Holland suffered no prejudice. <u>Id.</u> This Court agrees with that finding. The subject claim must be denied.

---

II, pp. 344-49. This Court will nevertheless consider only the arguments specifically asserted in the Amended Petition. <u>See</u> <u>Fuentes</u>, 89 Fed.App'x at 875.

**H.   claim 8: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where the Petitioner's sentence based on the aggravator "especially heinous, atrocious and cruel" is unconstitutional**

Through claim eight, Holland contends that jury instruction S-2, which described the "especially heinous, atrocious or cruel" aggravating circumstance, is unconstitutionally vague.  Instruction S-2 states:

> The Court instructs the jury that in considering whether the capital offense was especially heinous, atrocious or cruel; heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or even enjoyment of the suffering of others.
> An especially heinous, atrocious or cruel capital offense is one accomplished by such additional acts as to set the crime apart from the norm of capital murders -- the conscienceless or pitiless crime which is unnecessarily torturous to the victim.
> If you find from the evidence beyond a reasonable doubt that the defendant utilized a method of killing which caused serious mutilation, that there was dismemberment of the body prior to death, that the defendant inflicted physical or mental pain before death, that there was mental torture and aggravation before death, or that a lingering or torturous death was suffered by the victim then you may find this aggravating circumstance.

R., Holland II at 326.

Without the need for a detailed analysis, this Court finds that the above jury instruction was constitutionally appropriate under the holdings in Bell v. Cone, 543 U.S. 447, 453-60, 125 S.Ct. 847, 160 L.Ed.2d 881 (2005); United States v. Jones, 132 F.3d 232,

249-51 (5th Cir. 1998); <u>United States v. Hall</u>, 152 F.3d 381 (5th Cir. 1998), <u>abrogated on other grounds by</u> <u>United States v. Martinez-Salazar</u>, 528 U.S. 304 (2000).  In these cases, the courts upheld jury instruction language that is highly similar to the language of subject instruction S-2.  The Court therefore finds that Holland's claim eight must be denied.

I.   **claim 9: Petitioner was denied his rights to the effective assistance of counsel under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution at the re-sentencing proceedings**

The ineffective assistance of counsel allegation asserted under claim nine pertains to the Holland's alleged constitutionally inadequate representation at the re-sentencing trial.  Holland was represented by attorneys James L. Davis, III and John Holdridge during his re-sentencing trial and the direct appeal of the death sentence returned in that trial.  Holland states eight grounds for ineffective assistance of counsel at his re-sentencing. Amended Petition, pp. 121-22, ¶¶ 396-403.  However, the Mississippi Supreme Court in <u>Holland</u> III only addressed the following two arguments: (1) whether counsel was ineffective by failing to present adequate mitigating evidence (<u>Holland</u> III, pp. 5-6); and (2) whether the cumulative effect of counsel's failure to lodge objections rendered counsel ineffective (<u>id.</u> at pp. 6-7).[15]

_____

[15]Holland was represented by the same counsel at the re-sentencing trial and on the direct appeal of that trial. Therefore, ineffective assistance of counsel claims pertaining to the re-sentencing trial obviously were not presented to, or

To decide whether any of Holland's pending ineffective assistance of counsel claims can be ruled upon herewith, other than the two claims analyzed in Holland III, a determination must be made as to whether the claims were exhausted under the standards of § 2254(b)(1)(A) and (c). See supra, section III of this Opinion. If those claims are unexhausted and are procedurally barred, then they must be denied. Id.

Even though the Holland III court did not analyze many of the ineffective assistance claims now before this Court, those claims may be considered exhausted so long as Holland "fairly presented the substance of his claim[s] to the state courts." Bagwell, 372 F.3d at 755 (citation omitted). The two pleadings in which Holland had an opportunity to present to the state court his ineffective assistance of counsel claims regarding his re-sentencing trial were: (1) his Petition for Post-Conviction Relief; and (2) his Supplement / Amendment to Petition for Post-Conviction Relief.

In the Petition for Post-Conviction Relief, Ground II (pp. 14-23), Ground III (p. 27), and Ground IV (pp. 28-29), pertain to claims of ineffective assistance of counsel. Ground IV is the only argument related to Holland's re-sentencing trial. Through Ground IV, Holland contends that his representation at the re-sentencing

---

analyzed by the Holland II court on the direct appeal of the re-sentencing trial.

trial was ineffective because of the cumulative effect of counsel's failure to make appropriate objections.

Ineffective assistance of counsel claims are stated in Ground II (pp. 9-15) and Ground XV (pp. 51-52) of the Supplement / Amendment to Petition for Post-Conviction Relief.  Both of these claims relate at least in part to the re-sentencing trial.  Under Ground II, Holland argues that counsel failed to present adequate mitigating evidence at the re-sentencing phase.  Under Ground XV, Holland again argues ineffectiveness based on the cumulative effect of failure to make proper objections.

Based on the above, Court finds that with regard to the re-sentencing trial, the only two ineffective assistance of counsel claims that Holland presented to the Mississippi Supreme Court were: (1) whether counsel was ineffective by failing to present adequate mitigating evidence; and (2) whether the cumulative effect of counsel's failure to lodge objections rendered counsel ineffective.  Therefore, Holland failed to exhaust his state court remedies with regard to the remaining ineffective assistance of counsel claims.  See 28 U.S.C. § 2254(c).  The Court further finds that: (1) Holland is in procedural default on those claims; (2) he has shown no excusable cause of the default; and (3) he has not demonstrated that failure to consider those claims would result in a miscarriage of justice.  Accordingly, Holland is not entitled to

habeas relief based the unexhausted ineffective assistance of counsel claims. See Bagwell, 372 F.3d at 755.

The Court now proceeds with analyzing the two exhausted ineffective assistance of counsel claims. Addressing ineffective assistance of counsel pertaining solely to sentencing in a death penalty case, or re-sentencing as in this case, "the question is whether there is a reasonable probability that, absent the errors, the sentencer - including an appellate court, to the extent it independently reweighs the evidence - would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 466 U.S. at 695. The Court applies this standard in gauging claim nine of Holland's Amended Petition.

First considered is whether Holland's representation at the re-sentencing trial was constitutionally inadequate because of alleged failure to present adequate mitigating evidence. Analyzing this issue, the Holland III court held:

> ... Holland finally contends that trial counsel provided inadequate mitigation evidence at the second sentencing trial. The record indicates otherwise. Holland's brother and mother testified as to Holland's home life including physical and mental abuse suffered at the hands of an alcoholic father. Dr. Marc Zimmerman, a psychologist, examined Holland and testified at length that Holland, while functioning at an average or normal intellectual level, nonetheless suffered from some brain dysfunction. Even State's witness William Boyer testified that Krystal King was at Holland's home because she asked to be taken there.
> Holland now asserts that more could have been done and offers medical records from Parchman and hospital records detailing a history of automobile and hunting accidents as well as a drug overdose. Holland does not

61

explain how these records would serve to persuade a jury
to leniency in sentencing and therefore the argument
fails. This Court has previously noted that so long as
counsel makes known to the sentencing jury evidence of a
capital defendant's educational background, psychological
profile and childhood experience, there is no error under
the Strickland standard. <u>Brown v. State</u>, 798 So.2d 481,
498-99 (Miss. 2001); <u>Chase v. State</u>, 699 So.2d 521, 528
(Miss. 1997).

    Applying the standard imposed by Strickland, trial
counsel's conduct of the sentencing trial did not fall
below the standard expected of lawyer and even, assuming
some error on the part of counsel, the absence of any
assumed error would not have resulted in sentence other
than death. This issue is without merit.

<u>Holland</u> III, pp. 5-6.

This Court agrees with the findings of the <u>Holland</u> III Court.
Under the facts of this case, the Court finds that in all
probability, additional mitigating evidence would not have
dissuaded the jury from returning a death sentence. <u>See</u>
<u>Strickland</u>, 466 U.S. at 695; <u>Neal v. Puckett</u>, 286 F.3d 230, 245-47
(5th Cir. 2002).   The Court rejects Holland's ineffective
assistance of counsel claim relating to failure to produce
mitigating evidence.

Next considered is Holland's argument that counsel was
ineffective because of the cumulative effect of his failure to
initiate objections during the re-sentencing trial.  As found by
the <u>Holland</u> III court, trial counsel did in fact lodge objections
on many of the issues that Holland now raises. <u>Holland</u> III, pp. 6-
7.  The Court finds that the cumulative effect of any inadequacies
by Holland's counsel would have likely had no effect on the death

sentence received by Holland at his re-sentencing trial. <u>See</u> <u>Strickland</u>, 466 U.S. at 695.  Holland's second and final exhausted ineffective assistance of counsel claim is not well taken.

**J.   claim 10: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where the Petitioner was denied funds for a neurological examination**

Holland contends that his constitutional rights were violated by denial of his motion requesting funding for a neurological exam. Per Holland, the exam was necessary to determine the extent of brain dysfunction, and the possible effect of the alleged brain dysfunction on the ability to appreciate his own misconduct.

A criminal defendant's right to funding for neurological testing was addressed by the Fifth Circuit in <u>White v. Johnson</u>, 153 F.3d 197 (5th Cir. 1998).  The <u>White</u> court held:

> <u>Ake</u> recognizes a constitutional right on the part of a criminal defendant to the assistance of a psychiatrist in two general circumstances: (1) "when [the] defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial," and (2) "when the State presents psychiatric evidence of the defendant's future dangerousness" during a capital sentencing hearing.

<u>Id.</u> at 202 (citing <u>Ake v. Oklahoma</u>, 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)).

In the subject case, Holland presented no arguments pertaining to the second factor, presentation of psychiatric evidence by the state as to future dangerousness.  This Court therefore focuses on factor one, whether Holland presented evidence to the trial judge

that his sanity and/or mental capacity was a significant factor at the time of the subject rape and murder.  In determining whether Holland was entitled to funding for a neurological exam under factor one, the Holland II court held that such funding is warranted only "upon a showing of substantial need." Holland II, p. 333 (citation omitted).  This Court finds that the Holland II court applied the proper standard. See, Caldwell v. Mississippi, 472 U.S. 320, 232 n.1, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)(holding "[g]iven that petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial, we find no deprivation of due process in the trial judge's decision" not to appoint an expert).  In support of the proposition that Holland's mental condition and/or brain capacity was in issue, an Affidavit was presented to the trial court from Dr. Marc L. Zimmerman, a psychologist specializing in clinical and forensic psychology.  A copy of the Affidavit is attached as Exhibit 9 to the Supplement / Amendment to Petition for Post-Conviction Relief. Addressing the subject issue in light of Zimmerman's Affidavit, the Holland II court held:

> ... Holland was merely conducting a fishing expedition in an attempt to show a mental disorder resulting from brain damage due to injuries suffered as a child. More importantly, it does not escape this Court's notice that Dr. Zimmerman's affidavit does not contain a diagnosis that Holland is suffering from any mental disorder whatsoever, much less any brain damage. Simply put, there is no diagnosis of Holland, but rather Dr. Zimmerman uses the terms "organic brain dysfunction and organic brain damage" as interchangeable terms and

states that "the medical community generally accepts as reliable the results of neuropsychological testing of the type I performed on Gerald Holland." How can Holland have possibly established the proper criteria before the trial judge without any mention of a diagnosis by Dr. Zimmerman? Where is the proof of substantial need? We find that there is none. The trial judge was correct under these circumstances in denying such an expert. Determination of substantial need is within the discretion of the trial court. Substantial need criteria was not demonstrated by Holland.

Holland II, p. 334 (internal and end citations omitted).

After reviewing Zimmerman's Affidavit, this Court agrees with the Holland II court's assessment of the content of the Affidavit. This Court also agrees that Holland failed to show a substantial need for neurological testing. These findings lead the Court to the ultimate holding that Holland failed to prove that his sanity and/or mental capacity at the time of the offense was a significant factor at trial. Claim ten of Holland's Amended Petition must therefore be denied.

**K.     claim 11: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution where Petitioner has been subjected to the "death-row phenomenon" and the execution of Petitioner in this case serves no legitimate penological end**

Through claim eleven, Holland makes a nebulous argument regarding what he references as "the death row phenomenon." Under this argument, Holland contends that he is entitled to habeas relief because "execution of Petitioner at this late date serves no valid penological purpose and thus constitutes cruel and unusual

punishment under the Eighth Amendment." Amended Petition, p. 136, ¶ 438. However, Holland admits that "[t]his issue was not previously raised in the State courts" (id. at p. 130, ¶ 428), and that "[t]his issue has not yet been addressed by the United States Supreme Court" (id. at pp. 131-32, ¶ 430). The Court accordingly finds that this claim must be rejected as an unexhausted and procedurally barred claim. See supra, section III of this Opinion.

**L.   claim 12: Petitioner was denied his constitutional rights to due process and equal protection and rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution by the cumulative effect of the constitutional violations set forth in claims one through eleven above**

In Holland's twelfth and final claim, he asserts that the cumulative errors at his initial trial and re-sentencing trial warrant reversal of his conviction and sentence. This argument is not well taken.

In Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992)(*en banc*), the Fifth Circuit held

> federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process."

(Citing Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). Further, "[i]n determining whether the cumulative error doctrine provides relief, we must 'review the

66

record as a whole to determine whether the errors more likely than not caused a suspect verdict.'" <u>Spence v. Johnson</u>, 80 F.3d 989, 1001 (5th Cir. 1996)(quoting <u>Derden</u>, 978 F.2d at 1458).

After reviewing the record as a whole, the Court finds that the cumulative error doctrine provides no basis for habeas relief in this case.   Assuming *arguendo* that errors were made in the original and re-sentencing trials, those errors likely would not have changed the guilty verdict and subsequent sentence of death. Claim twelve is accordingly denied.

### V.  Conclusion

Based on the holdings presented above, the Court finds that the decisions of the Mississippi trial courts and the Mississippi Supreme Court neither involved unreasonable applications of clearly established federal law, nor were based on unreasonable determinations of facts in light of the evidence presented to them. Therefore, Holland's Amended Petition must be denied.

IT IS THEREFORE ORDERED that Holland's Amended Petition for Writ of Habeas Corpus (docket entry no. 30) is hereby denied.   A Final Judgment will be entered which dismisses this case with prejudice.

SO ORDERED this the 29th day of June, 2006.


<u>s/ William H. Barbour, Jr.  </u>
UNITED STATES DISTRICT JUDGE

tct